Stacey RASPBERRY, Plaintiff,

v.

**Herbie JOHNSON, et al., Defendants.**

**No. Civ.A. 98–D–1271–N.**

United States District Court,
M.D. Alabama,
Northern Division.

Feb. 18, 2000.

Susan Graham James, Denise A. Simmons, Montgomery, Alabama, for plaintiff.

C. Winston Sheehan, Jr., Allison L. Alford, Montgomery, Alabama, for defendant.

## MEMORANDUM OPINION AND ORDER

DE MENT, District Judge.

Before the court is a Motion For Summary Judgment ("Mot.") and Brief In Support thereof ("Def.s' Br."), filed November 17, 1999 by Defendants Herbie Johnson, Doug Cable, Bill Pace, Clyde Chambliss, Jr., Jim Ross, A.G. Carter, and Carl Johnson (herein referred to collectively as "Defendants"). On December 15, 1999, Plaintiff filed a Response To Defendants' Motion ("Pl.'s Resp."). Defendants filed a Reply Brief In Support of Motion For Summary Judgment ("Def.s' Reply") on December 22, 1999. After careful consideration of the arguments of counsel, the relevant law, and the record as a whole, the court finds that Defendants' Motion is due to be granted in part. However, the court finds that Plaintiff shall be granted limited leave of court to amend his Complaint and Defendants shall be granted limited leave of court to amend their Motion. Therefore, the court will reserve ruling on the remainder of Defendant's Motion not granted herein.

## I. JURISDICTION AND VENUE

The court properly exercises subject matter jurisdiction over this action, pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), 42 U.S.C. § 1983 (Civil Rights Act of 1871, as amended). The Parties do not contest personal jurisdiction or venue.

## II. SUMMARY JUDGMENT STANDARD

On a motion for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is enti-

tled to judgment as a matter of law." FED.R.CIV.P. 56(c). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no 'genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (citing FED.R.CIV.P. 56(c)).

The trial court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citations omitted). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Anderson,* 477 U.S. at 248, 106 S.Ct. 2505; *see also Barfield v. Brierton,* 883 F.2d 923, 933 (11th Cir.1989).

The party seeking summary judgment has the initial burden of informing the court of the basis for the motion and of establishing, based on relevant "portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,'" that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548 (citing FED. R.CIV.P. 56(c)). The mechanics of satisfying the initial burden vary, however, depending upon which party, the movant or the nonmovant, bears the burden of proof at trial. *See Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1115 (11th Cir.1993) (detailing the nature of the parties' responsibilities when preparing or defending against a motion for summary judgment).

Once this initial demonstration under Rule 56(c) is made, the burden of production, not persuasion, shifts to the nonmoving party. The nonmoving party must "go beyond the pleadings and by [his or] her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548 (citing FED.R.CIV.P. 56(e)). In meeting this burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). That party must demonstrate that there is a "genuine issue for trial." FED.R.CIV.P. 56(e); *see also Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348; *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505. An action is void of a material issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348.

## III. BACKGROUND

On November 15, 1996, Plaintiff was riding with Leo Lee ("Lee") in Lee's red Toyota Tercel. (Compl. ¶ 5; Pl.'s Resp. at 15.) Sometime during that evening, Lee's vehicle ran out of gas on County Road 41 in Autauga County, Alabama. (Pl.'s Resp. at 15.) After unsuccessfully trying to locate some gas, both men returned to the car and went to sleep. (Pl.'s Aff. at 1.)

On the same night, Defendant Doug Cable (Deputy Cable) was on duty as Deputy Sheriff for the Autauga County Sheriff's Department. (Cable's Aff. at 2.) He worked as a Canine Officer with his dog, Marko, who accompanied him that evening. (*Id.*) During the course of his shift, Deputy Cable received reports of "gun shots" being fired in various locations

around Autaugaville and was told to "be on the lookout for a small red car occupied by two white males in the Autaugaville area." (*Id.* at 2–3.) Deputy Cable was further informed that Plaintiff and Lee had purchased ammunition from a local store that day. (*Id.* at 3.) Deputy Cable was familiar with both of these individuals and he knew that Plaintiff had recently been convicted for receiving a stolen "handgun." (*Id.* at 2.) On the night in question, Plaintiff was free on bond awaiting sentencing on that conviction.[1] (*Id.;* Pl.'s Resp. at 20–21.)

After receiving the aforementioned reports, Deputy Cable proceeded to search for the suspect vehicle. While conducting this search, Deputy Cable received another report "that a small red car with two white males had wrecked on County Road 41." (Cable's Aff. at 3.) He then proceeded to County Road 41 where he found Lee's vehicle on the side of the road. (*Id.*) Suspecting that this was the vehicle he had been searching for, Deputy Cable pulled over and began conducting a felony stop procedure. (*Id.*)

Deputy Cable exited his car and ordered Plaintiff and Lee to "place their hands out of the side windows." (*Id.;* Pl.'s Aff. at 1.) He then instructed Plaintiff to open the car door, place his hands on top of his head, and walk backwards down the passenger side of the vehicle to the trunk area of the car. (*Id.;* Pl.'s Aff. at 1.) Plaintiff followed these instructions and stopped when reaching the trunk area of Lee's car. (Pl.'s Aff. at 1.)

At this point, the record contains disputed facts as to what transpired next.[2] However, the court must view the record in the light most favorable to Plaintiff. *See Welch v. Celotex Corp.,* 951 F.2d 1235, 1237 (11th Cir.1992); *see also Smith v. Mattox,* 127 F.3d 1416, 1417 (11th Cir. 1997) (holding that when deciding a motion for summary judgment, the court must "draw[ ] all reasonable inferences from the record evidence that are favorable to the nonmovant plaintiff"). Therefore, the court recites the ensuing incident as alleged by Plaintiff.

Plaintiff asserts that he complied with all instructions given to him by Deputy Cable. (*Id.*) However, Plaintiff submits that when he "reached the area past the trunk of the vehicle" Deputy Cable shot him in the back of the head without justification. (Pl.'s Aff. at 2–3.) In his affidavit, Plaintiff summarizes the incident by stating that

> Officer Cable shot me in the back of the head with what I now know was a .40 caliber pistol. I was unarmed and in full compliance with his instructions. There was nothing that occurred from the time of Officer Cable's arrival on the scene where he eventually shot me, that justified his having shot me. I have suffered tremendously both physically and men-

1. On May 30, 1997, Autauga County Circuit Judge John Bush sentenced Plaintiff under Alabama's Habitual Felony Offender Act to a term of imprisonment of fifteen years. (Def.s' Ex. 5.)

2. Deputy Cable contends that after Plaintiff reached the trunk area of the car, he ordered Plaintiff to "get on his knees." (Cable's Aff. at 3.) Once Plaintiff complied with this order, Deputy Cable started to give the same instructions to Lee. (*Id.*) However, while instructing Lee to exit the car, Deputy Cable asserts that his police dog, Marko, alerted him to some activity. (*Id.*) Deputy Cable describes the ensuing events as follows:

> I directed my attention to the passenger who dropped his hands to his waist area and started to get up on his feet. I had instructed the subject to not move. Because I was aware of information about [Plaintiff], because I was responding to calls regarding shots being fired, because I did not know whether [Plaintiff] was armed and attempting to reach for a weapon at his waist area, I fired my weapon at the subject who dropped back to his knees putting his hands back behind his head.
> The driver, [Lee], who was still in the vehicle started yelling "what was that" several times. I then instructed the driver to exit the vehicle in the same manner as the passenger. I handcuffed the driver. I proceeded to the passenger and saw that he had been shot in the head and called for emergency medical services.
> (Id.)

tally as a result of this shooting and will continue to have problems.

(*Id.*)

After the shooting incident, Plaintiff was transported to Jackson Hospital where he received emergency medical treatment for "a 10 cm wound to the posterior aspect of the scalp consistent with a grazing bullet injury." (Def.s' Ex. 6 at 85) (Jackson Hospital & Clinic Emergency Room Report.) Later that evening, Plaintiff was discharged in stable condition and placed in the custody of Defendant James "Herbie" Johnson ("Sheriff Johnson"), Sheriff of Autauga County. (*Id.* at 86; Pl.'s Resp. at 14.) Sheriff Johnson had Plaintiff taken to the Autauga County Jail on charges of Reckless Endangerment.[3] (Pl.'s Resp. at 21.)

The next day, Plaintiff "became sicker and requested to go back to the hospital repeatedly." (*Id.* at 14.) However, Plaintiff's requests were denied until later in the day when representatives from Jackson Hospital contacted the jail asking that Plaintiff be re-admitted for follow-up treatment.[4] (*Id.*); (Def.s' Ex. 6 at 72–74) (Jackson Hospital & Clinic Emergency Room Report.) Soon thereafter, the Autauga County Sheriff's Department returned Plaintiff to Jackson Hospital where he remained for several days receiving additional medical treatment.

On November 12, 1998, Plaintiff commenced the above-styled action by filing a six count Complaint against Sheriff Johnson individually and in his official capacity, Deputy Cable individually and in his official capacity, and five members of the Autauga County Commission (herein referred to collectively as "Commissioners") in their official capacities. Plaintiff seeks monetary damages from each of these Defendants. In Count One, Plaintiff alleges that "Deputy Cable's intentional misconduct and Sheriff Johnson's refusal to provide continuing medical attention, constitutes

cruel and unusual conduct in violation of the Eighth and Fourteenth Amendments. This conduct gives rise to a claim for relief pursuant to 42 U.S.C. § 1983...." (Compl.¶ 12.) In Count Two, Plaintiff avers that "Defendants Johnson and Cable's misconduct totally disregarded the rights of substantive due process guaranteed by the Fourteenth Amendment, giving rise to claims under 42 U.S.C. § 1983...." (*Id.* ¶ 15.)

Count Three contains a negligent supervision claim brought against Sheriff Johnson and the Commissioners pursuant to 42 U.S.C. § 1983. (*Id.* ¶¶ 17–19.) Count Four contains a negligent hiring claim against Sheriff Johnson and the Commissioners pursuant to 42 U.S.C. § 1983. (*Id.* ¶¶ 21–23.) In Count Five, Plaintiff alleges that all "[D]efendants' actions constitute willful and reckless physical battery and assault." (*Id.* ¶ 24.) Finally, Count Six contains an outrage claim against Deputy Cable and Sheriff Johnson. In the instant Motion, Defendants argue that summary judgment is due to be granted on each of the aforementioned claims. For the reasons to follow, the court agrees with Defendants in part, but finds that the interests of justice prevent a complete dismissal of Plaintiff's claims.

## IV. DISCUSSION

### A. *Eleventh Amendment Immunity*

■ As an initial matter, Deputy Cable and Sheriff Johnson argue that they are immune from suit in their official capacities pursuant to the Eleventh Amendment to the United States Constitution. (Def.s' Br. at 8.) Plaintiff wisely does not contest this argument because the Eleventh Amendment unequivocally bars suits for money damages against a state by the citizens of that state, unless the state consents to suit or specifically waives its Eleventh Amendment immunity. *Pennhurst*

---

3. This charge was eventually nol-prossed by the Autauga County District Attorney's Office. (Pl.'s Ex. 5.)

4. It is not clear from the record who denied Plaintiff's requests for additional medical treatment.

*State School and Hospital v. Halderman,* 465 U.S. 89, 98–100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). As previously noted by this court, "the State of Alabama has neither consented to suit nor waived its immunity." *Dowdell v. Chapman,* 930 F.Supp. 533, 553 (M.D.Ala.1996). Furthermore, the Supreme Court of Alabama has held that a sheriff is an executive officer of the state and, thus, is entitled to immunity under the Eleventh Amendment and the Alabama Constitution, Art. 1, § 14. *See Parker v. Amerson,* 519 So.2d 442 (Ala.1987). This immunity extends to deputy sheriffs because of their "traditional function under Alabama law as the Sheriff's alter ego." *Carr v. City of Florence,* 916 F.2d 1521, 1527 (11th Cir.1990). Therefore, based on the foregoing, the court finds that the Eleventh Amendment bars Plaintiff's claims brought against Deputy Cable and Sheriff Johnson in their official capacities. Accordingly, these claims are due to be dismissed as a matter of law.

### B. *Claims Against The Commissioners*

■ Next, the court finds that Plaintiff's claims against the Commissioners are also due to be dismissed as a matter of law. After a careful examination of Plaintiff's Complaint and Brief In Opposition To Summary Judgment, the court can only discern two claims lodged against the Commissioners. The first claim is one for negligent supervision, wherein Plaintiff contends that the Commissioners

> have contributed to Plaintiff's condition by not adequately supervising Sheriff Johnson and [ ] Deputy Cable. They have negligently exercised their duty to oversee and supervise the Autauga County Sheriff's Department and its employees and in doing so have allowed them to violate Plaintiff's constitutional rights by subjecting him to treatment in a negligent, reckless and wanton manner with intentional disregard for Plaintiff's well being.

(Compl.¶ 17.) The second claim against the Commissioners is one for negligent hiring, wherein Plaintiff alleges that "[t]he

Defendant County Commission members and Sheriff Johnson have acted negligently in the hiring of Deputy Sheriff Cable. In exercising their duties in this regard they should have known of Deputy Sheriff Cable's propensity to be 'trigger happy.'" (*Id.* ¶ 21.)

Plaintiff offers no argument or legal authority in support of these generalized claims asserted against the Commissioners. Indeed, Plaintiff barely mentions the Commissioners in his Brief. In other words, Plaintiff has rested on his pleadings and apparently expects the court to formulate an argument that will allow his claims against the Commissioners to survive summary judgment. However, "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment. Rather, the onus is upon the Parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned." *Resolution Trust Corp. v. Dunmar Corp.,* 43 F.3d 587, 599 (11th Cir.1995). Therefore, based on the foregoing, the court finds that Plaintiff has abandoned his claims against the Commissioners and, thus, summary judgment is due to be granted as to these claims.

■ Additionally, the court notes that "local governments can never be liable under § 1983 for the acts of those whom the local government has no authority to control. A local government 'must have power in an area in order to be held liable for an official's acts in that area.'" *Turquitt v. Jefferson County,* 137 F.3d 1285, 1292 (11th Cir.1998) (quoting *McMillian v. Johnson,* 88 F.3d 1573, 1577 (11th Cir. 1996)). Under Alabama law, county commissioners have no power over the sheriff in matters related to law enforcement. *See McMillian v. Monroe County,* 520 U.S. 781, 791, 117 S.Ct. 1734, 138 L.Ed.2d 1 (1997). Furthermore, county commissioners have "no authority to manage the sheriff's employees." *Turquitt,* 137 F.3d at 1289; *see also Terry v. Cook,* 866 F.2d

373, 379 (11th Cir.1989) (holding that county commissioners have no authority to hire or fire sheriff's deputies under Alabama law). Accordingly, the court finds that the Commissioners had no authority over the supervision or hiring of Deputy Cable. Therefore, based on the foregoing, the court finds that Plaintiff's negligent supervision and negligent hiring claims brought against the Commissioners are due to be dismissed as a matter of law. *See generally Dowdell v. Chapman*, 930 F.Supp. 533, 547–549 (M.D.Ala.1996) (finding that county was not liable for sheriff or deputy's law enforcement actions under 42 U.S.C. § 1983).

### C. *Qualified Immunity*

Now the court turns to the § 1983[5] claims lodged against Deputy Cable and Sheriff Johnson in their individual capacities. As to these claims, Deputy Cable and Sheriff Johnson assert, inter alia, that they are entitled to qualified immunity and, therefore, summary judgment is due to be granted in their favor.

■ Qualified immunity is an affirmative defense that must be raised by a defendant. *See Crawford–El v. Britton*, 523 U.S. 574, ——, 118 S.Ct. 1584, 1591, 140 L.Ed.2d 759 (1998). The court finds that Deputy Cable and Sheriff Johnson have sufficiently raised this defense in their Answer and subsequent pleadings submitted to the court. (Answer at · 2; Def.s' Br.; Def.s' Reply.) Once qualified immunity is raised by a defendant, the court should rule on its applicability prior to trial or otherwise the protections afforded by the immunity become "meaningless." *Hill v. Dekalb Regional Youth Detention Ctr.*, 40 F.3d 1176, 1184 n. 15 (11th Cir.

1994). As explained by the Eleventh Circuit:

> Qualified immunity provides " 'an entitlement not to stand trial or face the other burdens of litigation, conditioned on the resolution of the essentially legal [immunity] question.' " For that reason, once a defendant raises the defense, "the trial court must exercise its discretion in a way that protects the substance of the qualified immunity defense. It must exercise its discretion so that officials are not subjected to unnecessary and burdensome discovery or trial proceedings."

*Harbert Intern., Inc. v. James*, 157 F.3d 1271, 1280 (11th Cir.1998) (internal citations omitted).

■ Qualified immunity shields government officials performing discretionary functions from civil litigation and liability where "their conduct does not violate clearly established ... constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *see also Madiwale v. Savaiko*, 117 F.3d 1321, 1324 (11th Cir.1997). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).

■ The test for whether a governmental defendant is entitled to qualified immunity from liability in his or her individual capacity involves a two-step analysis. The first inquiry concerns "whether the defendant government official was performing a discretionary function." *Madiwale*, 117 F.3d at 1324. A government official acts within his or her discretionary authority if

---

**5.** Section 1983 provides that

[e]very person who, under color of a statute ordinance, regulation, custom, or usage, of any State ..., subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the

party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights," rather it provides "a method for vindicating federal rights elsewhere conferred." *Baker v. McCollan*, 443 U.S. 137, 144, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979).

the challenged actions were (1) "undertaken pursuant to the performance of his [or her] duties" and (2) "within the scope of [his or her] authority." *See Lenz v. Winburn,* 51 F.3d 1540, 1545 (11th Cir.1995) (quoting *Rich v. Dollar,* 841 F.2d 1558, 1564 (11th Cir.1988)). The determination that an officer was acting within her discretionary authority is a "low hurdle" to clear. *Godby v. Montgomery Co. Bd. of Educ.,* 996 F.Supp. 1390, 1400 (M.D.Ala. 1998) (Albritton, J.) (citing *Jordan v. Doe,* 38 F.3d 1559 (11th Cir.1994)).

■ The second inquiry is whether in performing a discretionary function, "the defendant should reasonably have known that the action violated an individual's clearly established federal statutory or constitutional rights." *Id.* To prove that a right was clearly established, a plaintiff must show that when the defendant acted, the law was "developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place, that 'what he is doing' violated federal law." *Lassiter v. Alabama A & M Univ.,* 28 F.3d 1146, 1149 (11th Cir.1994) (en banc) (citing *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). "[T]his is not to say that an official action is protected by qualified immunity unless the very action in question has been previously held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Madiwale,* 117 F.3d at 1324 (quoting *Anderson,* 483 U.S. at 640, 107 S.Ct. 3034).

As to the first inquiry, there is no dispute that Deputy Cable and Sheriff Johnson were government officials acting within the scope of their discretionary authority during all times relevant to this lawsuit. Therefore, Plaintiff bears the burden of proving that Deputy Cable and Sheriff Johnson's actions violated clearly established constitutional law. *See Sims v. Metropolitan Dade County,* 972 F.2d 1230, 1236 (11th Cir.1992). In deciding whether Plaintiff has successfully carried this burden, the court "must first deter-

mine whether [P]laintiff has alleged the deprivations of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Conn v. Gabbert,* 526 U.S. 286, ——, 119 S.Ct. 1292, 1295, 143 L.Ed.2d 399 (1999). In other words,

> if the court determines that [P]laintiff has not alleged a deprivation of a constitutional right, then the inquiry is over, for it would follow perforce that such right was not clearly established. However, if the court determines that [P]laintiff has, in fact, alleged a deprivation of a constitutional right, then further inquiry is needed as to "whether that right allegedly implicated was clearly established at the time of the events in question, and, of course, the violation of the clearly established right must be self-evident from the evidence put forward by [P]laintiff in [his] opposition to summary judgment."

*Thornton v. City of Montgomery,* 78 F.Supp.2d 1218, 1225 (M.D.Ala.1999) (Thompson, J.) (citations omitted). Therefore, applying the foregoing principles of law, the court now examines each of Plaintiff's § 1983 claims against Deputy Cable and Sheriff Johnson in their individual capacities.

### 1. *Count One—42 U.S.C. § 1983— Eighth and Fourteenth Amendments*

In Count One of his Complaint, Plaintiff alleges that "Deputy Cable's intentional misconduct and Sheriff Johnson's refusal to provide continuing medical attention, constitutes cruel and unusual conduct in violation of the Eighth and Fourteenth Amendments." (Compl.¶ 12.) However, Plaintiff fails to even mention these claims in his Brief, much less elaborate on them. In other words, Plaintiff has, once again, rested on his pleadings and apparently expects the court to formulate an argument that will allow his claims against the Commissioners to survive summary judg-

ment. As stated earlier, "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment. Rather, the onus is upon the Parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned." *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir.1995). Therefore, based on the foregoing, the court finds that Plaintiff has abandoned his claims alleged in Count One and, thus, summary judgment is due to be granted as to these claims.

■ In the alternative, the court notes that the Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. CONST. amend. VII. Defendants argue and the court agrees that the "cruel and unusual punishment" clause of the Eighth Amendment does not apply to pre-trial detainees. (Def.s' Br. at 9; Def.s' Reply at 3). That is, "[t]he proscription against cruel and unusual punishment applies only after a criminal conviction." *Gilmere v. City of Atlanta*, 737 F.2d 894, 905 (11th Cir.1984); *see also United States v. Myers*, 972 F.2d 1566, 1571 (11th Cir.1992) ("It is beyond cavil that the Eighth Amendment applies only after a prisoner is convicted.") While the record reflects that Plaintiff had been convicted of one or more crimes prior to the events giving rise to this lawsuit, these prior convictions are wholly unrelated to the instant claims lodged against Defendants. (Def.'s Ex. 5.) In other words, Plaintiff challenges the treatment he received during his pre-trial detention for a crime for which he was never convicted, (Pl.'s Ex. 5), not for the crimes for which he had previously been convicted. (Def.'s Ex. 5.) Therefore, it is without dispute that Plaintiff was a pre-trial detainee for the purposes of this lawsuit. Accordingly, the court finds that Plaintiff's Eighth Amendment claims, brought by and through the Fourteenth Amendment, are due to be dismissed.

### 2. Count Two—42 U.S.C. § 1983—Fourteenth Amendment Substantive Due Process

#### a. Deputy Cable

■ In Count Two of his Complaint, Plaintiff alleges that Deputy Cable violated his substantive due process rights guaranteed by the Fourteenth Amendment by "firing a pistol at short range." (Compl.¶ 14.) However, the tenor of Plaintiff's arguments regarding this allegation rings of an excessive force claim, rather than a substantive due process claim. Indeed, Plaintiff's Brief does not even mention the substantive due process claim against Deputy Cable, but does contain a cursory section entitled "Excessive Force," wherein Plaintiff alleges that "Deputy Cable violated [Plaintiff's] constitutional rights pursuant to the Fourth Amendment when he intentionally and without provocation shot [Plaintiff] in the back of the head." (Pl.'s Resp. at 24.)

■ The Supreme Court of the United States and the Eleventh Circuit have explicitly held that

> all claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other "seizure" of a free citizen should be analyzed under the Fourth Amendment and its "reasonableness" standard, rather than under a "substantive due process" approach. Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.

*Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989); *Menuel v. City of Atlanta*, 25 F.3d 990, 995 (11th Cir.1994). Furthermore, the Supreme Court has made clear that if a constitutional claim is covered by a specific constitutional provision, the claim must be ana-

lyzed under the standard appropriate to that specific provision, not under substantive due process. *See County of Sacramento v. Lewis*, 523 U.S. 833, —— n. 5, 118 S.Ct. 1708, 1714, 140 L.Ed.2d 1043 (1998); *Graham*, 490 U.S. at 394, 109 S.Ct. 1865. Therefore, based on the foregoing, Plaintiff should have pled and argued a Fourth Amendment excessive force claim against Deputy Cable instead of the Fourteenth Amendment substantive due process claim that is presently before the court. However, Plaintiff has completely failed to do so. The words "excessive force" do not appear anywhere in the Complaint. Consequently, the court must decide whether or not to infer an excessive force claim so as to allow the court to determine whether Plaintiff has sufficiently alleged a violation of a clearly established constitutional right.

■ In the recent case of *GJR Investments, Inc. v. County of Escambia*, 132 F.3d 1359 (11th Cir.1998), the Eleventh Circuit explicitly held that

> [a] district court may not infer claims other than those that plainly appear on the face of the complaint to defeat a defense of qualified immunity. To do so is to ignore both the heightened pleading standard [6] for § 1983 claims that is the law of this circuit and the Supreme Court's call for a "firm application of the Federal Rules of Civil Procedure" in cases where qualified immunity is asserted.

*Id.* at 1369 (citing *Butz v. Economou*, 438 U.S. 478, 508, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978)). Therefore, based on the foregoing, the court may neither infer an excessive force claim nor construe Plaintiff's substantive due process claim as a claim for excessive force.[7] Accordingly, the court finds that Plaintiff has failed to sufficiently allege a violation of a clearly established constitutional right. However, rather than dismissing Plaintiff's § 1983 claim against Deputy Cable, the court finds that the just remedy in this case is to grant Plaintiff limited leave to amend his Complaint. *See Arrington v. Dickerson*, 915 F.Supp. 1503, 1515 (M.D.Ala.1995); *see also LaFleur v. Wallace State Community College*, 955 F.Supp. 1406, 1420 (M.D.Ala. 1996) ("Generally, to remedy deficient pleadings in § 1983 actions, courts grant a plaintiff leave to amend the complaint ... rather than dismiss the cause of action.")

Specifically, the court directs Plaintiff to amend his deficient § 1983 claim against Deputy Cable on or before February 25, 2000. This amended claim shall state the specific constitutional provision which has been abridged and state with specificity how Deputy Cable acted in violation of said provision. Further, the amended claim shall allege detailed facts as to why Deputy Cable's defense of qualified immunity cannot be sustained in this action. *See Elliott v. Perez*, 751 F.2d 1472, 1482 (5th Cir.1985); *see also Wicks v. Mississippi State Employment Servs.*, 41 F.3d 991, 995 (5th Cir.1995), cert. denied, 515 U.S. 1131, 115 S.Ct. 2555, 132 L.Ed.2d 809 (1995) (requiring a § 1983 litigant "to allege the particular facts forming the basis of his claim, including those preventing [the plaintiff] from successfully maintain-

---

6. In § 1983 actions where government officials sued in their individual capacities have raised the defense of qualified immunity, the Eleventh Circuit has "tightened" the pleading requirements. *GJR Investments, Inc.*, 132 F.3d at 1367. In *Oladeinde v. City of Birmingham*, 963 F.2d 1481 (11th Cir.1992), the Eleventh Circuit held that in cases where qualified immunity is implicated, "some factual detail is necessary, especially if [the court is] to be able to see that the allegedly violated right was clearly established when the allegedly wrongful acts occurred." *Id.* at 1485.

7. The court notes that Plaintiff may have attempted to cure the defects in his Complaint by including a short section in his Brief entitled "Excessive Force." (Pl.'s Resp. at 24.) However, based on the holding in *GJR*, the court finds that this is not sufficient to defeat summary judgment. 132 F.3d 1359, 1369 ("A district court may not infer claims other than those that plainly appear on the face of the complaint to defeat a defense of qualified immunity."); *Id.* at 1368 (holding that plaintiff's attempt to cure the defects in its complaint by raising additional arguments in its brief was not enough to prevent dismissal).

ing a qualified immunity defense"). In addition, the amended claim shall be accompanied by a brief, no longer than ten pages in length, which details the claim and includes a controlling case from the Supreme Court of the United States, the Eleventh Circuit Court of Appeals, and/or the Supreme Court of Alabama showing that the alleged constitutional violation by Deputy Cable was clearly established at the time of the challenged action. *See D'Aguanno v. Gallagher,* 50 F.3d 877, 881 n. 6 (11th Cir.1995); *Lassiter v. Alabama A & M Univ., Bd. of Trustees,* 28 F.3d 1146, 1150 (11th Cir.1994); *Courson v. McMillian,* 939 F.2d 1479, 1498 n. 32 (11th Cir.1991).

Once Plaintiff has submitted the aforementioned pleadings, Deputy Cable will be allowed to file an amended motion for summary judgment on or before March 3, 2000. This amended motion shall be limited to Plaintiff's amended claim and shall be accompanied by a detailed brief not to exceed ten pages in length. As a point of clarification, the court reminds both Parties that Local Rule 15.1 mandates that amended pleadings "may not incorporate any prior pleading by reference." M.D.Ala. Local Rule 15.1.

#### b. *Sheriff Johnson*

In Count Two of his Complaint, Plaintiff also alleges that Sheriff Johnson violated his rights of substantive due process guaranteed by the Fourteenth Amendment by failing to provide "continued medical care to ... Plaintiff." (Compl.¶ 14.) This claim is premised on the contention that Sheriff Johnson acted with "deliberate indifference" by ordering that Plaintiff be prematurely discharged from Jackson Hospital and then denying Plaintiff's requests for additional medical treatment. (Pl.'s Resp. at 14, 26–27.)

It is clearly established that an official "violates a pre-trial detainee's Fourteenth Amendment right to due process if he acts with deliberate indifference to the serious medical needs of the detainee." *Lancaster v. Monroe County,* 116 F.3d 1419, 1425 (11th Cir.1997). Because it is undisputed

that Plaintiff was a pre-trial detainee with serious medical needs during all times relevant to this lawsuit and because Plaintiff has alleged that Sheriff Johnson acted with "deliberate indifference," toward his medical needs, the court finds that Plaintiff has sufficiently alleged a violation of a clearly established constitutional right under the Fourteenth Amendment. Therefore, the remaining issue is whether the evidence, viewed in the light most favorable to Plaintiff, establishes that Sheriff Johnson was deliberately indifferent to the medical needs of Plaintiff.

 As stated, "the case law [makes] it clear that an official acts with deliberate indifference when he knows that an inmate is in serious need of medical care, but he fails or refuses to obtain medical treatment for the inmate." *Lancaster,* 116 F.3d at 1425 (citing *Hill v. Dekalb Regional Youth Detention Center,* 40 F.3d 1176, 1186 (11th Cir.1994)). Furthermore, "an official acts with deliberate indifference when he intentionally delays providing an inmate with access to medical treatment, knowing that the inmate has a life-threatening condition or an urgent medical condition that would be exacerbated by delay." *Id.* (citing *Hill,* 40 F.3d at 1187). "[T]he official [charged with deliberate indifference] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan,* 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). In other words, "deliberate indifference describes a state of mind more blameworthy than negligence." *Id.* at 835, 114 S.Ct. 1970. Moreover, deliberate indifference "requires 'more than ordinary lack of due care for the prisoner's interests or safety.'" *Id.* (quoting *Whitley v. Albers,* 475 U.S. 312, 319, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986)).

Plaintiff first alleges that Sheriff Johnson acted with "deliberate indifference" to his medical needs by ordering that Plaintiff be prematurely discharged from Jack-

son Hospital on the night of the shooting incident. (Pl.'s Resp. at 14, 26–27.) However, Plaintiff offers no evidence that Sheriff Johnson ever made such an order. Instead, the record clearly reflects that officials from Jackson Hospital discharged Plaintiff in stable condition and placed him in the custody of Sheriff Johnson. (Def.s' Ex. 6 at 85) (Jackson Hospital & Clinic Emergency Room Report.) In other words, all evidence before the court indicates that the decision to release Plaintiff from Jackson Hospital was made solely by Plaintiff's treating physicians. (*Id.;* Johnson's Aff. at 3.) Accordingly, the court finds no merit in Plaintiff's argument that Sheriff Johnson acted with "deliberate indifference" to his medical needs by ordering that Plaintiff be prematurely discharged from Jackson Hospital.

Next, Plaintiff argues that Sheriff Johnson acted with "deliberate indifference" to his medical needs by denying Plaintiff's requests for additional medical treatment after he was initially released from Jackson Hospital. (Pl.'s Resp. at 14, 26–27.) However, as Sheriff Johnson correctly asserts, Plaintiff offers no evidence in support of this argument. (Def.'s Reply at 5–6.) While Plaintiff does allege that he "repeatedly sought [additional] medical treatment in the jail and was denied this," (Pl.'s Aff. at 2), there is simply no evidence that Plaintiff ever asked Sheriff Johnson for this additional treatment or that Sheriff Johnson knew that Plaintiff needed additional treatment.[8] Furthermore, there is no evidence that Sheriff Johnson ever refused to provide medical treatment for Plaintiff.

To the contrary, the record reflects that Sheriff Johnson only became aware of Plaintiff's need for additional medical treatment when representatives from Jackson Hospital called the Autauga County Jail and requested that Plaintiff be re-admitted for "follow-up treatment." (Johnson's Aff. at 3–4); (Def.s' Ex. 6 at 72–74) (Jackson Hospital & Clinic Emergency Room Report.) After this call from Jackson Hospital, it is undisputed that Sheriff Johnson had Plaintiff promptly re-admitted for additional medical treatment. (Johnson's Aff. at 4; Pl.'s Aff. at 2.) In other words, the evidence before the court shows that once Sheriff Johnson became aware of Plaintiff's medical needs, he "immediately returned [Plaintiff] to Jackson Hospital." (Johnson's Aff. at 4.) This certainly does not establish that Sheriff Johnson acted with "deliberate indifference" to Plaintiff's medical needs. *Lancaster,* 116 F.3d at 1425 Accordingly, based on the foregoing, the court finds that summary judgment is due to be granted in favor of Sheriff Johnson as to Plaintiff's substantive due process claim.

### 3. *Count Three—42 U.S.C. § 1983— Negligent Supervision*

In Count Three of his Complaint, Plaintiff alleges that "Sheriff Johnson [ ][ ] negligently supervised Deputy Cable in executing the duties of the Sheriff's Office by allowing Deputy Sheriff Cable to perform his duties recklessly and with an intentional disregard for the constitutional rights of others and in particular the rights of the Plaintiff." (Compl.¶ 18.) Plaintiff further contends that "[t]his conduct gives rise to a claim for relief pursuant to 42 U.S.C. § 1983." (*Id.* ¶ 18.) However, Section 1983 "is not itself a source of substantive rights," rather it provides "a method for vindicating federal rights elsewhere conferred." *Baker v. McCollan,* 443 U.S. 137, 144, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). In Count Three, Plaintiff fails to specify any constitutional violation or other area of law upon which his § 1983 is based.

---

8. Plaintiff produces no evidence or argument that Sheriff Johnson had any knowledge of these alleged requests for additional medical treatment. Therefore, the court cannot reasonably infer that Sheriff Johnson knew of these alleged requests. *See generally Harris v. Coweta County,* 21 F.3d 388, 391 n. 2 (11th Cir.1994) (holding that evidence of inmate's medical needs would not be considered in determining "whether Sheriff [ ] retains his entitlement to qualified immunity because there is no record evidence at this stage that [Sheriff] actually knew of [this evidence]").

Therefore, pursuant to the Eleventh Circuit's holding in *GJR*, discussed supra in Section IV.C.2.a., the court finds that Plaintiff has failed to sufficiently allege a violation of a clearly established constitutional right. 132 F.3d at 1368. However, rather than dismissing Plaintiff's § 1983 negligent supervision claim against Sheriff Johnson, the court finds that the just remedy in this case is to grant Plaintiff limited leave to amend his Complaint. *See Arrington v. Dickerson*, 915 F.Supp. 1503, 1515 (M.D.Ala.1995); *see also LaFleur v. Wallace State Community College*, 955 F.Supp. 1406, 1420 (M.D.Ala.1996) ("Generally, to remedy deficient pleadings in § 1983 actions, courts grant a plaintiff leave to amend the complaint ... rather than dismiss the cause of action.")

Specifically, the court directs Plaintiff to amend his deficient § 1983 negligent supervision claim against Sheriff Johnson on or before February 25, 2000. This amended claim shall state the specific constitutional provision which has been abridged and state with specificity how Sheriff Johnson acted in violation of said provision. Further, the amended claim shall allege detailed facts as to why Sheriff Johnson's defense of qualified immunity cannot be sustained in this action. *See Elliott v. Perez*, 751 F.2d 1472, 1482 (5th Cir.1985); *see also Wicks v. Mississippi State Employment Servs.*, 41 F.3d 991, 995 (5th Cir.1995), cert. denied, 515 U.S. 1131, 115 S.Ct. 2555, 132 L.Ed.2d 809 (1995) (requiring a § 1983 litigant "to allege the particular facts forming the basis of his claim, including those preventing [the plaintiff] from successfully maintaining a qualified immunity defense"). In addition, the amended claim shall be accompanied by a brief, no longer than ten pages in length, which details the claim and includes a controlling case from the Supreme Court of the United States, the Eleventh Circuit Court of Appeals, and/or the Supreme Court of Alabama showing that the alleged constitutional violation by Sheriff Johnson was clearly established at the time of the challenged action. *See D'Aguanno v. Gallagher*, 50 F.3d 877, 881

n. 6 (11th Cir.1995); *Lassiter v. Alabama A & M Univ., Bd. of Trustees*, 28 F.3d 1146, 1150 (11th Cir.1994); *Courson v. McMillian*, 939 F.2d 1479, 1498 n. 32 (11th Cir.1991).

Once Plaintiff has submitted the aforementioned pleadings, Sheriff Johnson will be allowed to file an amended motion for summary judgment on or before March 3, 2000. This amended motion shall be limited to Plaintiff's amended § 1983 negligent supervision claim and shall be accompanied by a detailed brief not to exceed ten pages in length. As a point of further clarification, the court, once again, reminds both Parties that Local Rule 15.1 mandates that amended pleadings "may not incorporate any prior pleading by reference." M.D.Ala. Local Rule 15.1.

#### 4. *Count IV—42 U.S.C. § 1983— Negligent Hiring*

■ In Count Four of his Complaint, Plaintiff alleges that "Sheriff Johnson [has] acted negligently in the hiring of Deputy Sheriff Cable." (Compl.¶ 21.) Plaintiff further contends that "[t]his conduct gives rise to a claim for relief pursuant to 42 U.S.C. § 1983." (*Id.* ¶ 23.) However, as stated above, Section 1983 "is not itself a source of substantive rights," rather it provides "a method for vindicating federal rights elsewhere conferred." *Baker v. McCollan*, 443 U.S. 137, 144, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). In Count Four, Plaintiff, once again, fails to specify any constitutional violation or other area of law upon which his § 1983 claim is based. Therefore, pursuant to the Eleventh Circuit's holding in *GJR*, discussed supra in Section IV.C.2.a., the court finds that Plaintiff has failed to sufficiently allege a violation of a clearly established constitutional right. 132 F.3d at 1368. However, rather than dismissing Plaintiff's § 1983 negligent hiring claim against Sheriff Johnson, the court finds that the just remedy in this case is to grant Plaintiff limited leave to amend his Complaint. *See Arrington v. Dickerson*, 915 F.Supp. 1503, 1515 (M.D.Ala.1995); *see also La-*

*Fleur v. Wallace State Community College*, 955 F.Supp. 1406, 1420 (M.D.Ala. 1996) ("Generally, to remedy deficient pleadings in § 1983 actions, courts grant a plaintiff leave to amend the complaint ... rather than dismiss the cause of action.")

Specifically, the court directs Plaintiff to amend his deficient § 1983 negligent hiring claim against Sheriff Johnson on or before February 25, 2000. This amended claim shall state the specific constitutional provision which has been abridged and state with specificity how Sheriff Johnson acted in violation of said provision. Further, the amended claim shall allege detailed facts as to why Sheriff Johnson's defense of qualified immunity cannot be sustained in this action. *See Elliott v. Perez*, 751 F.2d 1472, 1482 (5th Cir.1985); *see also Wicks v. Mississippi State Employment Servs.*, 41 F.3d 991, 995 (5th Cir.1995), cert. denied, 515 U.S. 1131, 115 S.Ct. 2555, 132 L.Ed.2d 809 (1995) (requiring a § 1983 litigant "to allege the particular facts forming the basis of his claim, including those preventing [the plaintiff] from successfully maintaining a qualified immunity defense"). In addition, the amended claim shall be accompanied by a brief, no longer than ten pages in length, which details the claim and includes a controlling case from the Supreme Court of the United States, the Eleventh Circuit Court of Appeals, and/or the Supreme Court of Alabama showing that the alleged constitutional violation by Sheriff Johnson was clearly established at the time of the challenged action. *See D'Aguanno v. Gallagher*, 50 F.3d 877, 881 n. 6 (11th Cir.1995); *Lassiter v. Alabama A & M Univ., Bd. of Trustees*, 28 F.3d 1146, 1150 (11th Cir.1994); *Courson v. McMillian*, 939 F.2d 1479, 1498 n. 32 (11th Cir.1991).

Once Plaintiff has submitted the aforementioned pleadings, Sheriff Johnson will be allowed to file an amended motion for summary judgment on or before March 3, 2000. This amended motion shall be limited to Plaintiff's amended § 1983 negligent hiring claim and shall be accompanied by a detailed brief not to exceed ten pages in length. As a final point of clarification, the court, reminds both Parties that Local Rule 15.1 mandates that amended pleadings "may not incorporate any prior pleading by reference." M.D.Ala. Local Rule 15.1.

### D. *State Law Claims*

The court will reserve ruling on Defendants' Motion For Summary Judgment as to Plaintiff's state law claims until all amended pleadings are under submission.

### V. ORDER

Based on the foregoing, it is CONSIDERED and ORDERED that Defendants' Motion For Summary Judgment be and the same is hereby granted in part as follows:

(1) GRANTED with respect to all claims against Deputy Cable and Sheriff Johnson in their official capacities.

(2) GRANTED with respect to all claims against the Commissioners.

(3) GRANTED with respect to all claims contained in Count One of Plaintiff's Complaint.

(4) GRANTED with respect to Plaintiff's Fourteenth Amendment Substantive Due Process claim brought against Sheriff Johnson in Count Two of Plaintiff's Complaint.

It is further CONSIDERED and ORDERED that Plaintiff shall be granted limited leave of court to amend his 42 U.S.C. § 1983 claim brought against Deputy Cable in Count Two of Plaintiff's Complaint. This amended claim shall be filed on or before February 25, 2000, and in accordance with the instructions provided in Section IV.C.2.a. of the attached Memorandum Opinion. Deputy Cable shall be granted limited leave of court to file an amended motion for summary judgment as to Plaintiff's amended 42 U.S.C. § 1983 claim brought against him. This amended motion for summary judgment shall be filed on or before March 3, 2000, and in accordance with the instructions provided

in Section IV.C.2.a. of the attached Memorandum Opinion.

It is further CONSIDERED and ORDERED that Plaintiff shall be granted limited leave of court to amend his 42 U.S.C. § 1983 negligent supervision claim brought against Sheriff Johnson in Count Three of Plaintiff's Complaint. This amended claim shall be filed on or before February 25, 2000, and in accordance with the instructions provided in Section IV.C.3. of the attached Memorandum Opinion. Sheriff Johnson shall be granted limited leave of court to file an amended motion for summary judgment as to Plaintiff's amended 42 U.S.C. § 1983 negligent supervision claim brought against him. This amended motion for summary judgment shall be filed on or before March 3, 2000, and in accordance with the instructions provided in Section IV.C.3 of the attached Memorandum Opinion.

It is further CONSIDERED and ORDERED that Plaintiff shall be granted limited leave of court to amend his 42 U.S.C. § 1983 negligent hiring claim brought against Sheriff Johnson in Count Three of Plaintiff's Complaint. This amended claim shall be filed on or before February 25, 2000, and in accordance with the instructions provided in Section IV.C.4. of the attached Memorandum Opinion. Sheriff Johnson shall be granted limited leave of court to file an amended motion for summary judgment as to Plaintiff's amended 42 U.S.C. § 1983 negligent hiring claim brought against him. This amended motion for summary judgment shall be filed on or before March 3, 2000, and in accordance with the instructions provided in Section IV.C.4. of the attached Memorandum Opinion.

Finally, it is CONSIDERED and ORDERED that the court will reserve ruling on Defendants' Motion For Summary Judgment as to Plaintiff's state law claims until all amended pleadings are under submission.

The Clerk of Court is DIRECTED to transmit a copy of this Order to the Parties via facsimile and United States Mail.